IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ACIA17 AUTOMOTIVE, INC., | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | No. _____ |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| NEW YORK MARINE AND GENERAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND EXTRA-CONTRACTUAL RELIEF**

NOW COMES ACIA17 Automotive, Inc. ("ACIA17"), through its counsel, and for its Complaint against Defendant New York Marine and General Insurance Company ("NYM"), with knowledge as to its own acts and on information and belief as to the acts of all others, alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment, breach of contract and other relief against NYM under a Commercial Crime Policy sold by NYM to its insured, ACIA17. The policy that NYM sold to ACIA17 is intended to protect ACIA17 against, among other things, loss resulting from theft by one of its employees. That is exactly what happened here. But rather than pay ACIA17's claim under the policy, NYM has chosen to deny coverage without proper basis in the law or the facts and without adequately explaining its coverage positions, and has failed to respond promptly (or, sometimes, at all) to its insured's communications, all in violation of the

claims-handling statutes and regulations that govern NYM's conduct. ACIA17 brings this action to redress NYM's bad faith, unreasonable, and vexatious breaches of its obligations to ACIA17.

## THE PARTIES

2. Plaintiff ACIA17 is a corporation organized under Delaware law, with its principal place of business in Chicago, Illinois. ACIA17 operates numerous car dealerships in the Chicago area.

3. Defendant NYM is a corporation organized under the laws of New York, with its principal place of business in New Jersey. At all relevant times, NYM was licensed to do and was doing business in the State of Illinois, including in this District.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201 insofar as the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**5.** Venue is proper in this District under 28 U.S.C. § 1391 insofar as a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE COMMERCIAL CRIME INSURANCE POLICY ISSUED BY NYM TO ACIA17

6. NYM issued Commercial Crime Policy No. CR2020DOP00366 to ACIA17 for the policy periods of April 9, 2019 to April 9, 2020 and April 9, 2020 to April 9, 2021 (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit A.

7. The Policy includes an "Insuring Agreement" whereby NYM promised to pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee."

8. The Policy defines "theft" to mean "the unlawful taking of property to the deprivation of the insured."

9. The Policy defines "money" to include "[c]urrency, coins and bank notes in current use and having a face value."

10. The Policy defines "securities" to include "negotiable and nonnegotiable instruments or contracts representing either 'money' or property."

11. The Policy defines "other property" to mean "any tangible property other than 'money' and 'securities' that has intrinsic value," but "does not include 'computer programs', 'electronic data', or any property specifically excluded under this Policy."

12. The terms "money", "securities", and "other property" are hereinafter collectively referred to as "Insured Property."

13. The Policy defines "employee" to include:

"Any natural person:

(a) While in your service and for the first 30 days immediately after termination of service …;

(b) Whom you compensate directly by salary, wages or commissions; and

(c) Whom you have the right to direct and control while performing services for you."

14. Any conditions and requirements imposed on ACIA17 by the Policy have been satisfied and/or waived and/or are subject to an estoppel or other avoidance against NYM.

**THE EMPLOYEE THEFT SUFFERED BY ACIA17, NYM'S DENIAL OF COVERAGE, AND NYM'S FAILURES TO ADEQUATELY EXPLAIN ITS COVERAGE POSITION, AND RESPOND PROMPTLY TO ITS INSURED'S COMMUNICATIONS**

15. Dustin Oliff held the position of sales associate with ACIA17 from a date prior to March 1, 2019 to June 5, 2019. Mr. Oliff, thus falls within the Policy definition of "employee" for all purposes relevant to this Complaint.

16. On March 1, 2019, ACIA17 hired a new president, Tamara Darvish.

17. On August 26, 2020, ACIA17 learned that Ms. Darvish's salary had been deposited into Mr. Oliff's bank account, rather than Ms. Darvish's bank account, and that Mr. Oliff had taken the amounts deposited and could not be located.

18. Following discovery of Mr. Oliff's theft, on August 28, 2020, ACIA17 timely notified NYM of its claim.

19. On October 20, 2020, NYM denied coverage for ACIA17's claim. Although NYM cited several policy provisions in its denial letter, that letter did not provide any guidance regarding how those policy provisions applied to the facts giving rise to ACIA17's claim or which of those provisions purportedly supported NYM's denial of coverage.

20. The Illinois Unfair Claims Practices Act, 215 ILCS 5/154.6, provides that it is an improper claims practice for an insurer to fail "in the case of the denial of a claim … to promptly provide a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial…." The October 20, 2020 denial of coverage violates this provision of the Unfair Claims Practices Act.

21. On December 7, 2020, ACIA17 requested that NYM provide ACIA17 with a reasonable and accurate explanation for NYM's denial of coverage, as required by relevant claims-handling statutes and regulations.

22. Although the Illinois insurance claims-handling regulations require insurers to acknowledge pertinent communications from an insured within 15 days from receipt of the communication (*see, e.g.,* 50 Ill. Admin. Code § 919.40), it was not until January 14, 2021 – more than one month later – that NYM finally responded to ACIA17's request for the statutorily required explanation that it owed ACIA17 as to why NYM had denied coverage for ACIA17's claim.

23. NYM's January 14, 2021 letter reiterated NYM's denial of coverage, stating – for the first time – that ACIA17 was not entitled to coverage because NYM did not view the taking of ACIA17's Insured Property as involving a "direct" loss by "theft" and because Mr. Oliff was not an "employee" for a portion of the period during which deposits were being made to his account, instead of Ms. Darvish's account. The letter advised ACIA17 to let NYM know if ACIA17 disagreed with NYM's evaluation of the claim and invited ACIA17 to share with NYM how it believed the Policy should apply to the claim.

24. On July 9, 2021, ACIA17 did exactly that, and responded to NYM's January 14, 2021 letter with an explanation as to why ACIA17's claim was covered by the Policy. As that letter explained in detail:

> [E]ven if the money at issue was deposited into the incorrect employee's account (that of Mr. Oliff) due to another employee's error, NYM's position on this issue ignores the fact that Mr. Oliff wrongfully took (*i.e.*, stole) the money that was deposited into his account. Mr. Oliff was not entitled to simply retain funds that were mistakenly placed in his account, and his failure to return those funds constitutes the crime of theft.

25. ACIA17's letter then cited numerous news media reports regarding individuals being charged with theft for failing to return funds that were mistakenly deposited into their accounts.

26. As ACIA17's letter also made clear, there could be no dispute that Mr. Oliff was an "employee" of ACIA17 during a portion of the period during which funds were being

mistakenly deposited into his account, such that: (1) a portion of ACIA17's claim indisputably was covered by the Policy; and (2) the entirety of ACIA17's claim should be paid by NYM because the Policy was, at the very least, ambiguous as to how an ongoing theft would be covered in the event that a former employee continued his or her theft after ceasing employment.

27. ACIA17's July 9, 2021 letter requested a response from NYM within two weeks and informed NYM that ACIA17 wished to resolve the claim by no later than 30 days from the date of the letter.

28. In violation of its statutory and regulatory claims handling duties and obligations, as well as its contractual duties of good faith and fair dealing, NYM failed to respond promptly to ACIA17's July 9, 2021 letter and ignored multiple follow-up requests from ACIA17 for a response to that letter. Instead, NYM waited more than eleven weeks – until September 29, 2021 – to respond to ACIA17's July 9, 2021 letter, at which time it simply responded – falsely – that ACIA17 had not provided any additional information regarding the claim and reiterated its denial of coverage.

29. NYM's repeated and continuing failures to fulfill its claim-handling obligations to ACIA17 include failures by NYM to respond promptly to its insured's communications, failures by NYM to adequately explain its denials of coverage, and a failure by NYM to pay amounts that should be undisputed. These failures have occurred in such number and frequency as to indicate a pattern on the part of NYM.

30. NYM's repeated and continuing failures to fulfill its claim-handling obligations to ACIA17 and to pay ACIA17's claim are vexatious, unreasonable, and violate NYM's duties of good faith and fair dealing.

## COUNT I - BREACH OF CONTRACT

31. ACIA17 incorporates by reference and realleges Paragraphs 1 through 30, as though fully stated herein.

32. Mr. Oliff stole funds belonging to ACIA17 that were intended to be used for payment of Ms. Darvish's salary.

33. NYM has failed and refused to perform its contractual obligations to provide coverage to ACIA17 with respect to the losses caused by Mr. Oliff's criminal activity.

34. By virtue of this failure and refusal, NYM is in breach of its obligations under the Policy.

35. Any conditions precedent to coverage under the Policy have been satisfied, waived, or are otherwise inapplicable.

36. As a result of NYM's breach of the Policy, ACIA17 has been denied the benefits of insurance coverage under the Policy and has incurred damages.

WHEREFORE, ACIA17 respectfully prays that the Court:

    A. Award ACIA17 its actual damages sustained as a result of NYM's breach of the Policy, in an amount to be established through proof at trial;

    B. Award ACIA17 its costs and expenses, including but not limited to attorneys' fees, in bringing and pursuing this action;

    C. Award ACIA17 pre-judgment and post-judgment interest; and

    D. Award ACIA17 any other and further relief to which it is entitled.

## COUNT II – DECLARATORY RELIEF

37. ACIA17 incorporates by reference and realleges Paragraphs 1 through 36, as though fully stated herein.

38. Pursuant to the terms and conditions of the Policy, NYM is obligated to pay the losses incurred by ACIA17 as a result of the theft of its funds by Mr. Oliff.

39. NYM has denied that it is obligated to pay ACIA17's losses, alleging that: (a) those losses are not the result of "theft;" and (b) ACIA17's losses are "indirect."

40. An actual controversy of a justiciable nature presently exists between ACIA17 and NYM concerning the parties' rights and obligations under the Policy.

WHEREFORE, ACIA17 respectfully prays that the Court:

A. Declare that ACIA17 is entitled to coverage for all amounts deposited by ACIA17 into Mr. Oliff's account and wrongfully stolen by him;

B. Award ACIA17 its costs and expenses, including but not limited to attorneys' fees, in bringing and pursuing this action;

C. Award ACIA17 pre-judgment and post-judgment interest; and

D. Award ACIA17 any other and further relief to which it is entitled.

## COUNT III – EXTRA-CONTRACTUAL RELIEF

41. ACIA17 incorporates by reference and realleges Paragraphs 1 through 40, as though fully stated herein.

42. NYM's breach of the Policy and its acts and omissions in connection with such breaches are unreasonable, frivolous, unfounded, outrageous, and/or otherwise in violation of common law and applicable statute.

43. As a direct and natural consequence of NYM's conduct, ACIA17 is entitled to the common law and statutory remedies provided therefor, including without limitation, money damages in an amount to be proven at trial, exemplary damages in an amount sufficient to deter NYM from such conduct in the future, statutory penalties, attorneys' fees and costs, and interest.

44. NYM's breaches of the Policy are vexatious, unreasonable, and in violation of 215 ILCS § 5/155, and as a direct and natural consequence of NYM's violations of 215 ILCS § 5/155, ACIA17 is entitled to the statutory remedies provided therefor, including without limitation, money damages in an amount to be proven at trial, statutory penalties, attorneys' fees, and costs.

WHEREFORE, ACIA17 respectfully prays that the Court:

A. Award ACIA17 its actual damages sustained as a result of NYM's breach of the Policy, in an amount to be established through proof at trial;

B. Award ACIA17 exemplary damages in an amount sufficient to deter NYM from future acts of bad faith;

C. Award ACIA17 its costs and expenses, including but not limited to attorneys' fees, in bringing and pursuing this action;

D. Award ACIA17 statutory penalties and/or statutory damages;

E. Award ACIA17 pre-judgment and post-judgment interest; and

F. Award ACIA17 any other and further relief to which it is entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all issues deemed so triable.

Dated: September 30, 2021　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　By: /s/ *Thomas A. Marrinson*

　　　　　　　　　　　　　　　　　　　　Thomas A. Marrinson
　　　　　　　　　　　　　　　　　　　　REED SMITH LLP
　　　　　　　　　　　　　　　　　　　　10 S. Wacker Drive, 40th Floor
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　　Telephone: (312) 207-1000
　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 207-6400
　　　　　　　　　　　　　　　　　　　　tmarrinson@reedsmith.com

　　　　　　　　　　　　　　　　　　　　***COUNSEL FOR PLAINTIFF ACIA17, AUTOMOTIVE, INC.***